THE TRIBUNE ASSOCIATION, RESPONDENT, *v.* THE SUN PRINTING AND PUBLISHING ASSOCIATION AND WALTER W. ADAMS, SUPERINTENDENT OF BUILDINGS, APPELLANTS.

*Building law — chap. 625 of 1871 — powers of superintendent under — Injunction — when allowed to prevent trespass.*

The powers of a public officer, under an act of the legislature for the protection of life and property — *e. g.*, the superintendent of public buildings in New York — are limited to the exercise of a proper discretion, and the exigency of the circumstances, and he will be restrained by injunction from an arbitrary exercise of power.

An injunction may be granted to restrain a trespass, when irreparable injury may result from the threatened wrong.

APPEAL from an order continuing an injunction, restraining the defendants from taking possession of a lot of ground of the plaintiff.

*Willard Bartlett,* for the appellants.

*Cornelius A. Runkle,* for the respondent.

Brady, J.:

The plaintiff and the defendant the Sun Printing and Publishing Association are the owners of adjoining property on Frankfort street, in the city of New York. In October last the plaintiff took down the building on its lot, and began to excavate for the foundation-walls of a new building. While the work was in progress the plaintiff was directed to stop by the defendant Adams, on the ground that the wall of the adjoining building, belonging to the Sun Association, was unsafe and dangerous, and liable to fall. Complaint having been made, according to the provisions of the building law, against the Sun building, such proceedings were had that a precept was issued requiring and directing the defendant Adams to take down the easterly wall of the Sun building from the foundation to the third tier of beams.

The defendant Adams and the Sun Association threatened to take possession of the plaintiff's property, to use the same for the purpose of taking down and repairing the wall, and the plaintiff brought this action to prevent such use. The question presented is, whether they are entitled to such relief. The power of the legislature to enact laws for the protection of life and property cannot be questioned, and it is not necessary at this period to illustrate, by citation of authorities, a proposition so essential to the existence of government itself. The right of the authorities to interfere, therefore, through their officers, in a proper case, to prevent the falling of a wall or building, or other structure, the continuance of which would be dangerous to the property or lives of others, should not be the subject of discussion founded upon doubt. There is, however, a qualification imposed upon the use of this power, and it is that the emergency shall prevail which renders its exercise necessary. The existence of a law for a special purpose does not give unlimited authority to the person selected to carry out its provisions. He does not rule with absolute sway. Such a law, which is generally remedial in character, and in the nature of a police regulation, is based upon emergencies that may arise requiring summary proceedings; and it is exigency, therefore, on which it rests. The ordinary process, by action at law, would be too dilatory, and therefore utterly valueless to effect the object to be attained. The health laws are of this character, and

demonstrate the necessity of both the power of the legislature to act, and of the speed to be employed for the end to be accomplished, which may be to prevent the spreading of a fatal epidemic.

When the contemplated emergency presents itself, the authorities are not only called upon to act, but should do so promptly, in the discharge of their duty to the public. If the thing to be done has a purely local situs, such, for example, as a wall to be taken down or sustained, and it cannot be done without invading the property of another, the exigency authorizes the invasion, and it must be submitted to.

The sacrifice which is thus made, if any, is a contribution to the general good which every citizen is called upon to make, and upon which the fabric of society depends. Whether the emergency really exists is, however, a subject under the control of the courts, and their process may be invoked for protection, if protection should be necessary. The law under which the defendant Adams essayed to enter upon the plaintiff's land recognizes this element, because it provides, by section 44, that all officers appointed under its provisions should, *so far as necessary* for the performance of their respective duties, have the right to enter any building or premises; and by section 38, which provides for a summary trial by jury of the question, whether buildings, premises or structures surveyed and condemned, are really unsafe or dangerous. (Act of 1871, chap. 625.)

The principle thus stated does not, in any way, interfere with or restrict the power of the department of buildings to determine what is to be done, but *the manner* in which it is to be done. In other words, whether, in taking down or repairing a wall it shall be done by entering upon and occupying the land of another person. The legislature did not design to invest the superintendent of buildings with absolute unlimited authority on that subject, or to give him uncontrollable discretion in regard to it. It can be done, *only so far as necessary*, in the language of section 44, already referred to. The plaintiff in this action, as already suggested, sought to restrain the defendants from entering upon their premises, or occupying or using the same for the purpose of repairing the wall to which proceedings had related, and the relief demanded was asked, upon the sworn statements that the defendant Adams

said he intended to put the Sun Printing and Publishing Company in possession of plaintiff's lot, and that the repairs could not be done without entering upon the premises of the plaintiff, *which statements were not denied.*

It was upon this ground that the learned justice at special term continued the injunction. He said the plaintiff had shown, among other things, "that Adams, without any necessity or authority of any court, is about using the plaintiff's premises to do work which can be done by the use of the premises of the defendant, whose wall is to be repaired or made safe;" and "that though the other defendant substantially alone contested the case, there was no attempt to contradict the plaintiff's case, and no denial of any fact set up by the plaintiff."

The plaintiff's case not only rested upon the fact that the use of its land was not necessary to enable the repairs to be made, but upon the further fact that its building was unfinished, and that if prevented, as it would be if its land was taken, from proceeding with the building, and putting its boilers in the same, "thereby being, as alleged, prevented from properly heating it during the then coming winter, the loss and damage would be incalculable and irreparable." It thus appears that conceding to the defendants the construction placed by them upon the act of 1871 (*supra*), through their learned counsel, excepting, however, his view of the absolute power of the discretion vested in the superintendent, the propriety of the injunction is manifest. The case of *Underwood v. Green* (42 N. Y., 140), to which he called our attention, is an adjudication against his proposition in reference to the discretion mentioned, and affirmatory of the doctrine of this opinion on that subject. In that case the plaintiff's dead hogs were taken from the cars of the Hudson River Railroad Company, and carried away under the direction of the city inspector, by virtue of an ordinance requiring him to cause all putrid and unsound beef, pork, etc., found in any street or other place in the city, to be forthwith removed and disposed of by removal beyond the limits of the city, or otherwise, so as most effectually to secure the public health. The court said, in pronouncing judgment: "While it must be conceded that the inspector, in the discharge of his duties under the ordinance, is clothed with a judicial discre-

tion, yet he is an officer of a limited and special jurisdiction, and when in any given case his power is challenged, he must prove some facts invoking, or tending to invoke the exercise of his discretion.  For instance, he could not go into a store and arbitrarily confiscate a stock of hides, merely upon the allegation that they were dangerous to public health.  He would have to show that they were putrid, or in some way dangerous to public health, and when he had shown this, then he would make a case calling for the exercise of his discretion."  In this case, when the defendant Adams was called upon to show the necessity of entering upon the plaintiff's land in order to do his duty, he should, or the other defendant should, have shown that it was necessary to do so, and then he would have made a case calling for the exercise of his discretion.

Neither he nor his co-defendant did so, and the right to exercise the contemplated power was not sustained.  The order appealed from should for these reasons be affirmed, with ten dollars costs and disbursements.

DANIELS, J.:

The apprehended act which was made the subject of the application for the injunction would have been a trespass, and, under ordinary circumstances, not subject to that restraint.  But the rule which denies an injunction to restrain a trespass has its exceptions, as well established and clearly defined as the rule itself, and one of them includes the case where irreparable injury may and probably will result from the threatened wrong.  The complaint in this action presented facts sufficient to show such a case.  For that purpose it was stated, that the ground owned by the plaintiff, which the defendant proposed to occupy to repair the wall of the building owned by the Sun Printing and Publishing Association, was necessarily required by the plaintiff for the erection of a building to contain the apparatus required to supply its tenants with heat, and which it had become obligated by its leases to them to supply ; that without it the leases made with such tenants could not be performed, and the rooms of its building would become untenantable.

For the consequences of such a wrong the law affords no adequate means of redress by way of damages.  The injury sustained can-

not be repaired in an action, brought simply for damages. They cannot be correctly shown nor estimated, and for that reason an injunction may be properly issued to restrain the perpetration of a trespass which will probably be attended with such results. The case was sufficient in this respect.

It was also alleged that the defendant's building could be repaired without entering upon the premises of the plaintiff. This, with the other facts, were properly sustained by the affidavits accompanying the complaint, and they entitled the plaintiff to the injunction which was issued in its favor.

What authority may be derived from chapter 625 of the Laws of 1871, to enter upon the premises of one person to secure the unsafe walls and building of another, where the entry may be necessary for that purpose, it is not now necessary to consider or decide, for no such necessity has been shown in this case. It appears, on the contrary, that there is no need of such an entry in order to secure the wall of the building requiring to be in part rebuilt. The order made should be affirmed.

DAVIS, P. J., concurred in opinion of BRADY, J.

Order affirmed.